**Michael GILLUM, Plaintiff,**

**v.**

**The NASSAU DOWNS REGIONAL OFF TRACK BETTING CORPORATION OF NASSAU, Hempstead Personnel, Management Employment Dep'T of the Nassau Downs Regional Off Track Betting Corp., Defendants.**

**No. 03CV1210 (ADS)(ARL).**

United States District Court, E.D. New York.

Feb. 14, 2005.

Michael Gillum, Attica, NY, pro se Plaintiff.

Podvey, Sachs, Meanor, Cantenacci, Hildner & Cocoziello P.C. by Douglas E. Motzenbecker, Esq., Newark, NJ, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On March 6, 2003, Michael Gillum ("Gillum" or the "Plaintiff"), commenced this

action pursuant to 42 U.S.C. § 1983 against the Nassau Downs Regional Off Track Betting Corporation of Nassau, Hempstead Nassau Downs Off Track Betting Corporation Personnel Department and the Management Department of the Nassau Downs Regional Office of Off Track Betting Corporation ("Nassau Downs" or the "Defendants") alleging that the Defendants unlawfully failed to hire him because of his status as a convicted felon.

Presently before the Court is a motion by the Defendants for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

## I. BACKGROUND

### A. The *Pro Se* Complaint

While incarcerated at the Nassau County Correctional Center, the Plaintiff commenced this action against Nassau Downs using a form entitled "FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983." The Complaint does not specify which federal right the Defendants allegedly violated but merely states "the case is Employment Discrimination." In particular, the complaint states in relevant part:

> Since 1999 through 2002 of June the Defendants have discriminated against my employment applications filed with them. They never answered my applications at all and constantly tucked my application in the Hempstead Employment file of the Nassau Regional Off Track Betting Corp./Office of the Hempstead OTB Off Track Region of Nassau County, Hempstead, New York 11550. The reason it was done cause [sic] I feel and know I am a felon. Under such law of New York State the Off Track Nassau Region claimed they don't have to hire felons, only to turn around and violate my rights and the State of New

York Law right not to hire a felon. On December 2, 2002, the Nassau Regional Off Track Betting in fact hired a felon to head the Human Resources for the Nassau Regional Off Track Betting Corp. This created stress mentally, anger mental anguish and the fact that the Nassau Off Track Betting Region has had a relationship with me since the 1980's as a member of the Region by way of Telephone Betting Accts. Service Department. This is a violation and definitely discrimination intentionally practiced by the defendants period.

Compl. ¶ IV. Thus, reading the complaint liberally, *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999), the Plaintiff appears to be asserting causes of action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and pursuant to Section 1983 for violations of the due process and equal protection clauses of the Fourteenth Amendment. The Plaintiff also appears to be asserting a cause of action pursuant to N.Y. Exec. Law § 296(15) (McKinney 2003) and N.Y. Correct. Law § 752 (McKinney 2003) which makes it unlawful to discriminate against a convicted felon, subject to specific exceptions.

### B. The Undisputed Facts

Unless otherwise specified, the undisputed facts are as follows.

Nassau Downs is a public benefit corporation organized and existing under New York law, Rac. Pari–Mut. Wag. & Breed. § 502 (McKinney 2003), and is in the business of simulcasting horse racing and accepting wagers at its fourteen branch locations throughout Nassau County, New York.

From July 2002 to the present the Plaintiff has been incarcerated as a result of his May 2001 and October 2002 pleas of guilty to crimes of trespass and second degree

attempted robbery, respectively. During the five years prior to his incarceration, namely from July 1997 to July 2002, the Plaintiff claims that he submitted approximately fifteen employment applications to the Defendants for positions as an accountant, cashier, and/or in the maintenance department, but that someone from Nassau Downs "put it in the drawer and then . . . put it in the garbage can." The Defendants deny that they received any employment applications from the Plaintiff. To that end, in response to a discovery order entered by United States Magistrate Judge Arlene R. Lindsay dated October 7, 2003, the Defendants certified that after diligent inquiry, they found no evidence that the Plaintiff ever submitted any employment applications.

In support of their motion for summary judgment, the Defendants also submitted a New York Unified Court System Criminal History Record Search (CHRS) Data Report regarding the Plaintiff. This Report indicates that during the time period from February 1985 to October 2002, the Plaintiff has been convicted more than six times including convictions for sexual misconduct, robbery in the second degree, criminal trespass, attempted robbery, and grand larceny. The Plaintiff does not dispute that his criminal history contains several felony convictions.

The Defendants also submitted a Declaration by William Funk, Executive Director of Corporate Affairs for Nassau Regional Off Track Betting Corporation which details the application procedure for employment at Nassau Downs. This Declaration states that because Nassau Downs employees, namely those in the positions of cashier, attendant, or custodian, have access to areas where cash and other wagering receipts are processed, all applicants for such positions are required to disclose any and all criminal convictions. In that regard, at all times relevant to this case,

Nassau Down's employment application have required applicants to disclose any and all criminal convictions. With regard to Gillum, Funk states:

> Although Nassau Downs has been unable to find any record that plaintiff Michael D. Gillum applied for employment with its offices, it would not have hired him, given his lengthy criminal record. Regardless of whether he sought work as a cashier, attendant, or custodian, plaintiff would have been working in a fiduciary capacity, with access to large sums of cash. Nassau Downs could not in good conscience have made him an offer of employment.

Funk Decl. ¶ 12.

In response to the motion for summary judgment, Gillum contends that Nassau Downs hired other felony offenders to do the same or similar jobs for which he applied. However, the only such person named by the Plaintiff who he claims was treated differently is Patrick Williams. According to the Plaintiff, Williams is a convicted federal felony offender. The Plaintiff states that Williams is the "head of the human resources department."

## II. DISCUSSION

### A. Standard of Review

When deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Niagara Mohawk Power Corp. v. Jones Chemical Inc.,* 315 F.3d 171, 175 (2d Cir.2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 11, 106 S.Ct. 1348, 1356 n. 11,

89 L.Ed.2d 538 (1986)) (quoting Fed. R.Civ.P. 56(e)).

 In addition, the Court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe,* 174 F.3d at 280 (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983) (citations omitted).

Furthermore, the Second Circuit has cautioned that a district court may grant the motion only if the *pro se* party has received notice that failure to respond to the motion "will be deemed a default." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). To comply with Second Circuit jurisprudence and Local Rule 56.2, the Defendants filed a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment." Also, the Defendant affixed a copy of Fed.R.Civ.P. 56 to the Notice.

## B. As to the Claim for Employment Discrimination

 Reading the *pro se* complaint liberally, and considering the facts in the light most favorable to the Plaintiff, Gillum cannot maintain this action under Title VII. Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–16. Thus, the Plaintiff's status as a convicted felon is not a protected class under Title VII. *Quick v. Runyon,* No. 96 Civ. 0474, 1997 WL 177858, at * 1 (E.D.N.Y. March 25, 1997) ("It is true that criminal history cannot form the basis of a Title VII ... claim."). Accordingly, the Defendants motion for summary judgment with respect to the Plaintiff's claim pursuant to Title VII is granted.

## C. As to the Claim Pursuant to Section 1983

 Gillum's complaint also asserts claims pursuant to 42 U.S.C. § 1983 which may be brought against state actors to enforce rights created by federal statutes and the Constitution. *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2502, 65 L.Ed.2d 555 (1980). Liberally construed, Gillum appears to be claiming violations of the due process and equal protection clauses of the Fourteenth Amendment.

Because the Defendants do not dispute that they are state actors, for purposes of this motion, the Court will assume that the Defendants are state actors within the meaning of this statute. The Court will also assume, for purposes of this motion, that the Plaintiff properly submitted his employment applications and that the reason he was denied employment was because of his status of a prior felony offender.

 In order to bring a claim under section 1983, a plaintiff must allege that (1) the defendant was acting "under color of state law" at the time the conduct complained of occurred, and (2) that the conduct deprived the plaintiff of " 'rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Greenwich Citizens Comm., Inc. v. Counties of Warren & Washington Indus. Dev. Agency,* 77 F.3d 26, 29–30 (2d Cir.1996) (quoting *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)); *see also Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 743–744 (2d Cir. 2003).

### 1. As to the Due Process Claims

 A violation of the due process clause of the Fourteenth Amendment may be asserted under a substantive or procedural due process theory. Nevertheless, to state a cognizable claim under either theo-

ry, the Plaintiff must allege a protected property or liberty interest. *See Bd. of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

With respect to property interests, the Second Circuit has stated that "[A]lthough the Constitution protects property interests, it does not create them." *Donato v. Plainview–Old Bethpage Cent. School Dist.,* 96 F.3d 623, 629 (2d Cir.1996), cert. denied, 519 U.S. 1150, 117 S.Ct. 1083, 137 L.Ed.2d 218 (1997). Rather, property interests are created and defined " 'by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' " *Id. (quoting Roth,* 408 U.S. at 577, 92 S.Ct. 2701). For Gillum to establish that he has a protected property interest in his employment with Nassau Downs, he must demonstrate a " 'constitutionally—protected legitimate claim of entitlement' to the positions which [he] sought, rather than 'an unprotected unilateral expectation of employment.' " *See Huff v. West Haven Bd. of Educ.,* 10 F.Supp.2d 117, 122 (D.Conn.1998) (quoting *Donato,* 96 F.3d at 629 (citations omitted)). As the *Huff* Court described:

> The mere act of not rehiring an individual, however, does not infringe a protected liberty interest. Rather, the actions must be of the kind to effectively hinder the individual's ability to practice in her profession. For instance, stigmatizing public comments regarding the employee's dishonest, illegal or immoral behavior might deprive the employee of the freedom to take advantage of other employment opportunities, thereby implicating a liberty interest.

*Huff,* 10 F.Supp.2d at 122 (internal quotations and citations omitted). Here, the Plaintiff sets forth no facts that create a material issue as to whether he had a

constitutionally protected liberty or property interest in a position with Nassau Downs or that Nassau "deprive[d][him] of the freedom to take advantage of other employment opportunities." *Id.* Thus, the Defendant's motion to dismiss the Plaintiff's claims relating to the due process clause of the Fourteenth Amendment is granted.

## 2. As to the Equal Protection Claim

The Fourteenth Amendment to the United States Constitution provides that no state shall ... deny to any person within its jurisdiction the equal protection of the laws, and is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 439 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

In a case such as this, when a Plaintiff does not allege that a "fundamental right" was interfered with or that he is a member of a "suspect class," a government action will ordinarily survive an equal protection challenge so long as the action is rationally related to a legitimate governmental purpose. *Plyler v. Doe,* 457 U.S. 202, 216–17, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Because he is not a member of a "suspect class," the Plaintiff may maintain an equal protection claim as a "class of one" so long as he alleges that he was treated differently than similarly situated persons and either that there was no rational basis for the unequal treatment received or that the denial of the application was motivated by personal animus. *Harlen Assoc. v. Inc. Village of Mineola,* 273 F.3d 494, 500 (2d Cir.2001).

Thus, there are two possible theories pursuant to which the Plaintiff, as a "class of one," could proceed. First, under the so-called "selective prosecution theory," the Plaintiff must show:

both (1) that [he] was treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Cobb v. Pozzi,* 363 F.3d 89, 110 (2d Cir. 2004) (internal quotations omitted). Second, under the *Olech* theory, Gillum must demonstrate that the different treatment was intentional and "that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *see also African Trade & Info. Center, Inc. v. Abromaitis,* 294 F.3d 355, 364 (2d Cir.2002); *Ricketts v. City of Hartford,* 74 F.3d 1397, 1407 (2d Cir.1996). A government official's action "can be considered irrational only when [he] acts with no legitimate reason for [his] decision." *Harlen Associates,* 273 F.3d at 500 (2d Cir.2001) (internal quotation marks omitted).

Assuming that the Plaintiff did, in fact, apply for employment with the Defendants, the Plaintiff faces several additional obstacles in succeeding with his equal protection claims. In his Rule 56.1 counterstatement, the Plaintiff does not specify the names, positions, dates of employment of any of the individuals as to whom the Plaintiff contends he was treated differently. The Court's independent review of the Plaintiff's deposition transcript indicates that the only individual that the Plaintiff is able to identify as an employed prior federal felony offender is Patrick Williams, a person who, according to the Plaintiff, is the "head of the human resources department." Even assuming this is true, the Plaintiff does not set forth any allegations or evidence that the Defendants acted with malicious or bad faith intent to injure him.

Finally, and perhaps most significant, the Court finds that the Defendants had a rational and legitimate basis for their decision not to hire the Plaintiff for the positions of cashier, attendant, or custodian. Because Gillum's criminal history includes robbery, larceny, and sexual misconduct and because the positions for which Gillum claims he applied would place him in direct contact with large sums of money and the personal account information of Nassau Downs' customers, Nassau Downs refusal to hire the Plaintiff was legitimate and rational and does not rise to the level of a constitutional violation.

Accordingly, Court finds that the Plaintiff has not raised a material issue of fact sufficient to defeat the Defendant's motion for summary judgment as to the equal protection claim. Thus, the Defendants' motion for summary judgment dismissing the Plaintiff's Section 1983 equal protection claim is granted.

### D. As to the New York State Law Claims

Gillum also appears to be claiming violations of New York State Law. In particular, the complaint states "Under such law of New York State the Off Track Nassau Region claimed they don't have to hire felons, only to turn around and violate my rights and the State of New York Law right not to hire a felon." Under New York State Law it is unlawful, with certain exceptions, to deny an "application for any license or employment ... by reason of the applicant's having been previously convicted of one or more criminal offenses, or by reason of finding of lack of 'good moral character' when such finding is based upon the fact that the applicant has previously been convicted of one or more criminal offenses...." N.Y. Correct. § 752(1)-(2) (McKinney 2003). However, the Court declines to exercise supplemental jurisdiction

**572**

with regard to the Plaintiff's state law claims. *See* 28 U.S.C. 1367(c)(3) (stating that the Court may decline to exercise supplemental jurisdiction if the Court has dismissed all claims over which it had original jurisdiction); *see also Travelers Ins. Co. v. Keeling,* 996 F.2d 1485, 1490 (2d Cir.1993) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994). Accordingly, the New York State law claims against the Defendants are dismissed without prejudice.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the motion by Nassau Downs pursuant to Fed.R.Civ.P. 56 for summary judgment dismissing the Plaintiff's complaint in its entirety is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court is directed to enter judgment for the Defendants and against the Plaintiff dismissing the complaint in its entirety; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**