Kenneth GILMORE, Jr., Plaintiff,

v.

Glenn S. GOORD, et al., Defendants.

No. 03–CV–6239L.

United States District Court,
W.D. New York.

March 22, 2005.

Kenneth Gilmore, Jr., Staten Island, NY, pro se.

Gary M. Levine, Rochester, NY, for Defendants.

### DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, Kenneth Gilmore, Jr., appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that defendants, all of whom were, at all relevant times, DOCS officials or employees, violated plaintiff's constitutional rights by interfering with his legal mail. Defendants have moved for summary judgment.

### BACKGROUND

Viewed in the light most favorable to plaintiff, the record indicates that in April 2000, at which time plaintiff was incarcerated at Wyoming Correctional Facility, he wrote a letter to Norman Effman, the Executive Director of Wyoming County–Attica Legal Aid Bureau, Inc. ("Legal Aid Bureau"), asking him to file an Article 78 proceeding on plaintiff's behalf. Plaintiff had recently been denied parole by the New York State Board of Parole ("Parole Board"), and he sought to challenge the Parole Board's decision.

A staff member at the Legal Aid Bureau replied to plaintiff, instructing him to fill out and return an application for poor person status. On May 2, 2000, plaintiff placed in the inmate mailbox an envelope addressed to the Legal Aid Bureau, containing the application, as well as the results of some legal research that plaintiff had conducted over the previous two years.

On July 6 and again on September 6, 2000, plaintiff wrote letters to the Legal Aid Bureau, asking about the status of his case. In both letters plaintiff expressed concern about the four-month statute of limitations for Article 78 proceedings running out. Plaintiff's Ex. D at 3, 6.

In a letter dated September 19, 2000, Legal Aid Bureau staff attorney Susan K. Jones informed plaintiff that although she had received his July 6 and September 6 letters, the Legal Aid Bureau "ha[d] no record of ever having received" his application for poor person status. Plaintiff's Ex. D at 8. She also stated that since the

Parole Board's Appeals Unit had sent plaintiff its final decision on his parole application in March 2000, "it would appear that the 4-month statute of limitations has expired and that a petition can no longer be filed." *Id.*

Despite Jones's statement that the limitations period had expired, plaintiff filed an Article 78 petition in April 2001. In an order dated July 5, 2001, Acting Supreme Court Justice Mark H. Dadd dismissed the petition on the ground that the statute of limitations had expired. Plaintiff's Ex. L.[1]

Plaintiff commenced this action on April 30, 2003, naming as defendants: Glenn S. Goord, the commissioner of DOCS; Lucien J. LeClaire, Jr., the deputy commissioner of facility operations of DOCS; Paul Levine, the superintendent of Wyoming Correctional Facility; a number of "John Doe" defendants; and several other named defendants, who have since been dismissed. On December 1, 2003, plaintiff filed an amended complaint naming the "John Does" as Correction Officer Kevin Knuth and mail room clerks Penny Meyers and Kathleen Kellner.

Plaintiff alleges that Knuth, Meyers and Kellner deliberately confiscated or refused to mail plaintiff's May 2, 2000 letter to the Legal Aid Bureau, and that as a result, he was unable to timely file an Article 78 petition. Plaintiff alleges that these actions violated his constitutional right of access to the courts, as well as his rights to free speech, due process, and equal protection. Plaintiff also alleges that defendants Goord and LeClaire ratified or acquiesced in these wrongful actions.[2]

## DISCUSSION

### I. Statute of Limitations

As stated, plaintiff's original complaint, which he filed on April 30, 2003, named three defendants—Goord, LeClaire, and Levine—as well as several "John Doe" defendants. Defendants Knuth, Meyers and Kellner were not named until the amended complaint was filed on December 1, 2003.

As to the latter three defendants, plaintiff's claims must be dismissed as untimely. The statute of limitations applicable to claims brought under § 1983 in New York is three years. *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir.2004). Here, the alleged failure to mail plaintiff's letter to the Legal Aid Bureau occurred in May 2000, and plaintiff discovered that alleged failure no later than September of that year, when he received a letter from the Legal Aid Bureau stating that they had never received his application for poor person status.

The law in the Second Circuit is clear that

Rule 15(c) [which deals with the relation back of amended pleadings] does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities. Rule 15(c) explicitly allows the relation back of an amendment due to a "mistake" concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff

---

1. In response to an Order of this Court dated February 10, 2005, defendants have submitted additional materials concerning plaintiff's parole status. It appears that the Parole Board denied plaintiff parole again in 2001 and in 2003, and that plaintiff filed a timely Article 78 proceeding following the 2003 de-nial. That proceeding is currently pending in state court.

2. Plaintiff also alleges that Levine ratified these actions, but Levine has never been served and has not appeared in this action.

knows that such defendants must be named cannot be characterized as a mistake.

*Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 470 (2d Cir.1995), *as modified,* 74 F.3d 1366 (2d Cir.1996). *See also Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (rule applies "even when a suit is brought by [a] *pro se* litigant").

Although plaintiff contends that his original complaint adequately identified the John Doe defendants by describing their job titles and duties, that is not enough. "[T]he rule is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification." *Barrow,* 66 F.3d at 469. That simply did not occur here.

■ Plaintiff's reliance on Rule 17(a), which provides that actions must be prosecuted by the real party in interest, is also misplaced. That rule is typically applied when the named *plaintiff* is discovered not to be the real party in interest. *See, e.g., Shetterly v. Raymark Indus., Inc.,* 117 F.3d 776, 785 (4th Cir.1997); *see also* Comments to 1966 Amendment to Fed.R.Civ.P. 17 (purpose of the real-party-in-interest rule is "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata"); *United Health-Care Corp. v. American Trade Ins. Co., Ltd.,* 88 F.3d 563, 569 (8th Cir.1996) ("the requirements in Rule 17(a) are for the benefit of the defendant").

Furthermore, although in some circumstances a plaintiff may be allowed "to substitute the proper defendant when circumstances change so as to render the prior defendant not the real party in interest," *Goldin v. Bartholow,* 166 F.3d 710, 721 (5th Cir.1999), I fail to see how that could

be said of this action. The simple fact is that plaintiff did not know the names of the John Doe defendants when he filed the original complaint, and under the case law recited above, his belated naming of three of those defendants in the amended does not relate back to the filing of the original complaint. Plaintiff's claims against Knuth, Meyers and Kellner must therefore be dismissed.

## II. Lack of Personal Involvement of Defendants Goord and LeClaire

■ I find that defendants Goord and LeClaire are entitled to summary judgment on the ground that there is no evidence that they were personally involved in the alleged constitutional deprivations.

■ A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must show that the supervisor was personally involved in the alleged constitutional deprivation. *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 254 (2d Cir.2001); *Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir.2001). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

The record shows that plaintiff sent a letter to Goord in October 1999 complaining about missing legal mail, and Goord referred the matter to LeClaire. *See* LeClaire Decl. (Dkt. # 29) Exs. A, B. LeClaire responded to plaintiff by letter in November 1999, stating that there was a record of plaintiff having sent one piece of certified mail in August 1999, and that plaintiff might "want to follow up on your mail tracer regarding" the allegedly missing mail. *Id.* Ex. C. LeClaire added that in the future, plaintiff should consider "send[ing] sensitive mail certified, return receipt, to better trace the route of [plaintiff's] important mail if the need arises." *Id.*

■ "Where a supervisor's involvement in a prisoner's complaint is limited to forwarding of correspondence to appropriate staff, the supervisor has insufficient personal involvement to sustain a § 1983 cause of action." *Liner v. Goord*, 310 F.Supp.2d 550, 555 (W.D.N.Y.2004). *See, e.g., Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir.1997) (summary judgment affirmed where commissioner referred plaintiff's letter to the prison superintendent); *Garvin v. Goord*, 212 F.Supp.2d 123, 126 (W.D.N.Y.2002) (granting summary judgment to DOCS Commissioner based on lack of personal involvement); *Farid v. Goord*, 200 F.Supp.2d 220 (W.D.N.Y.2002) (dismissing action against DOCS Commissioner and prison superintendent for lack of personal involvement where plaintiff merely sent petition to them and each referred the petition down the chain of command for investigation). Plaintiff's claims against Goord must therefore be dismissed.

LeClaire's alleged involvement was also too minimal and tangential to the actions giving rise to plaintiff's claims in this action to provide a basis for liability. LeClaire states in his declaration that upon receiving plaintiff's letter from Goord, a member of LeClaire's staff forwarded it to the facility superintendent for investigation, and that after the investigation was completed, a letter was prepared for LeClaire's signature informing plaintiff of the results of the investigation. LeClaire Aff. ¶¶ 3–5. For the same reasons stated with respect to Goord, such actions cannot give rise to § 1983 liability.

Even assuming that LeClaire's actions with respect to plaintiff's letter to Goord and the subsequent investigation were more substantial than that, however, there is insufficient evidence to create an issue of fact about whether he was personally involved with respect to the disappearance of plaintiff's May 2, 2000 letter to the Legal Aid Bureau. There is no evidence that LeClaire was aware of, but turned a blind eye to, any policy or custom of interfering with inmates' legal mail at Wyoming Correctional Facility, that he failed to act on information about such activities, or that he was grossly negligent in supervising any subordinates who committed the wrongful acts (in fact, there is no evidence that he even had direct supervisory authority over any employees who might have interfered with the mailing of the May 2 letter). It appears that LeClaire acted reasonably in responding to plaintiff's letter to Goord, and his actions in that regard cannot give rise to liability under § 1983. *See Burgess v. Morse*, 259 F.Supp.2d 240, 249 (W.D.N.Y.2003) ("the one letter to Goord is insufficient to show the personal involvement necessary to establish § 1983 liability").

### III. Failure to Show Actual Injury

Finally, I note that even if plaintiff could establish that his mail was intentionally not delivered by DOCS officials to the Legal Aid Bureau, plaintiff could not es-

tablish that this action violated his access to the courts in a meaningful way.

Plaintiff claims that he was prevented from litigating the denial of parole in 2000. The same decision to deny parole, however, was made by the Parole Board in both 2001 and 2003. Plaintiff did not challenge the 2001 denial but has challenged the 2003 denial in an Article 78 proceeding which is now pending.

Courts have repeatedly held that to make out a claim for denial of access to the courts, an inmate plaintiff must show that "the defendant's actions resulted in *actual injury* to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Cancel v. Goord,* No. 00 Civ.2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (quoted in *Davis,* 320 F.3d at 351) (emphasis added). *See also Amaker v. Foley,* No. 94–CV–0843, 2003 WL 21383010, at *4 (W.D.N.Y. Feb. 18, 2003) ("For plaintiff to establish an injury, he must show 'that a non-frivolous legal claim has been frustrated or was being impeded' due to defendants' action") (quoting *Lewis,* 518 U.S. at 353, 116 S.Ct. 2174); *accord John v. New York City Dep't of Corrections,* 183 F.Supp.2d 619, 628 (S.D.N.Y. 2002). Since the Parole Board has repeatedly denied parole to plaintiff after 2001, plaintiff's failure to challenge the first denial, in 2000, would seem to have little practical affect, especially since no reason has been given as to why plaintiff failed to challenge the 2001 denial of parole.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. # 27) is granted, and the complaint is dismissed.

IT IS SO ORDERED.